# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | |
|---|---|
| **RICHARD P. JONES**<br>    **LA. DOC #179421** | **CIVIL ACTION NO. 08-1993** |
| **VS.** | **SECTION P** |
| **TIMOTHY WILKINSON, WARDEN** | **CHIEF JUDGE JAMES** |
| | **MAGISTRATE JUDGE HAYES** |

## <u>REPORT AND RECOMMENDATION</u>

*Pro se* petitioner Richard P. Jones filed a petition for writ of *habeas corpus* (28 U.S.C. §2254) on December 18, 2008. Petitioner is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Winn Correctional Center, Winnfield, Louisiana. Petitioner attacks his 2005 manslaughter conviction and the twenty year sentence imposed by the Fifth Judicial District Court, West Carroll Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.  For the following reasons it is recommended that petitioner's motion to voluntarily dismiss Claims 1, 2, and 3 of the petition be GRANTED and that Claims 1, 2, and 3 be **DISMISSED;** it is further recommended that the remaining claims of ineffective assistance of counsel, Claims 4, 5, 6, 7, and 8 be **DISMISSED WITH PREJUDICE** under the provisions of Rule 4 of the Rules Governing Section 2254 Cases in the United States District Court since it plainly appears from the petition and exhibits that petitioner is not entitled to relief.

## *Background*

Petitioner was indicted and then tried on a charge of second degree murder.  On March 11, 2005, the jury returned a responsive verdict of manslaughter. [rec. doc. 1-5, Exhibit U, p.

570/837- transcript of trial, March 7-11, 2005[1]] On June 1, 2005 he was sentenced to serve 20 years at hard labor without benefit of parole. [*Id.*, Exhibit B, p. 9 – Minutes of Court.]

On June 8, 2005, petitioner's attorney filed a motion for an appeal to the Second Circuit Court of Appeals. The record was not lodged as ordered. Petitioner's retained counsel canceled the check he wrote to the Second Circuit Court of Appeals and the Court "set [the] appeal in abeyance." Petitioner then filed a *pro se* "Motion" for an "out-of-time appeal" in the district court. On July 17, 2006, petitioner was permitted to proceed *in forma pauperis* and the Louisiana Appellate Project was appointed to represent him on appeal. [rec. doc. 1-4, p. 2]

On October 17, 2006, appellate counsel advised petitioner that while petitioner was permitted to file a *pro se* appeals brief, he should refrain from arguing claims of ineffective assistance of counsel since the appeals record did not provide sufficient grounds to support such claims. **[***Id.***, Exhibit B]** On October 24, 2006, petitioner's court appointed appellate counsel submitted his brief arguing a single assignment of error – excessiveness of sentence. [*Id.*, Exhibit D] On December 9, 2006, petitioner submitted a *pro se* appeal brief arguing: (1) insufficiency of the evidence; and (2) the trial court erred when it denied two motions for mistrial. [*Id.*, Exhibit F] On March 28, 2007, the Second Circuit Court of Appeals affirmed the conviction and sentence and sent notice of judgment to the petitioner and his appellate counsel. [*Id.*, Exhibit H; see also *State of Louisiana v. Richard P. Jones*, 41,880 (La. App. 2 Cir. 3/28/2007), 954 So.2d 296.] Petitioner did not seek further direct review in the Louisiana Supreme Court. [rec. doc. 1-4, p. 3]

---

[1] Petitioner submitted pleadings, correspondence, trial transcripts, and other documents related to his petition. These documents were too voluminous to copy to CM/ECF and were therefore filed as a Manual Attachment associated with rec. doc. 1-5. Petitioner did not number or otherwise identify these pages, and therefore, the undersigned has assigned sequential Exhibit identifiers (Exhibits A – U) to the various documents for ease of reference. These sequential identifiers were applied to the documents in the order in which they were received by the Clerk of Court.

On April 28, 2007, petitioner filed a *pro se* Application for Post-Conviction Relief in the Fifth Judicial District Court arguing specific instances of ineffective assistance of trial and appellate counsel – (1) trial counsel conceded petitioner's guilt during closing argument by stating, "Richard is not totally innocent, he is definitely guilty of criminal negligence, I'm not asking you for not guilty."; (2) trial counsel failed to provide a strategy or call a single defense witness and failed to retain an expert pathologist; (3) appellate counsel failed to argue on appeal the ineffectiveness of trial counsel. [rec. doc. 1-5, Exhibit I]

The State filed an Answer and submitted the affidavit of petitioner's trial counsel.[2] Petitioner objected. [*Id.*, Exhibit K] On July 26, 2007, the district court denied relief and provided written reasons for its denial. [*Id.*, Exhibit L[3]]

---

[2] According to that affidavit (1) "... he talked to [petitioner] at length and had the consent of [petitioner] in arguing that he was guilty of negligent homicide..." and felt that this was a reasonable strategy since the penalty for negligent homicide was less than the penalty for murder and, (2) he did consult with an expert pathologist, Dr. Galvez, however he did not call Galvez as a witness because Galvez looked at the evidence and advised that he could do nothing to help the petitioner's cause; and (3) that he did not call any witnesses because all of the eye witnesses were called by the prosecution and he was able to cross examine each of them. [*Id.*, Exhibit J]

[3] The Court made the following findings of fact and conclusions of law:

"Although [counsel] called no witnesses himself, he thoroughly cross examined all witnesses called by the prosecution. This Court is convinced there were no additional witnesses that would have added any facts that would have been favorable to the defendant. The real question at issue was whether there was specific intent to kill. According to the affidavit of Leroy Smith, he had the consent of the defendant to argue negligent homicide. There is no doubt that the defendant shot the rifle that resulted in the death of the victim. The attorney's trial strategy was successful in that he was able to convince the jury to return a compromise verdict... the attorney's strategy convinced [the jury] the appropriate verdict would be manslaughter rather than a second degree murder verdict...

In his cross examination, the attorney brought out all facts that could possibly benefit Jones, that being that his house had been burglarized, that a vehicle from his home had been keyed, he had horses that had been let out, and there were other acts of vandalism prior to this incident. He also presented to the jury the fact that the victim and others in the vehicle had been drinking and smoking marijuana prior to the incident.

The affidavit [of counsel] indicates that he did in fact talk to the pathologist, Dr. Galvez in Jackson, Mississippi, but did not call him as a witness because of the advice given by Dr. Galvez that he would not be able to help Jones in this case. The defendant has shown no specific errors that would prejudice him in his defense...

Jones also argues that [counsel] abandoned the appeal and his appellate attorney missed the ineffective assistance of counsel claims. The record does not shown that [counsel] abandoned his appeal, rather that [counsel] withdrew, and in due course appellate counsel was appointed. Regardless, this matter has been presented for review to the Court of Appeal, and they affirmed all rulings of the trial court. The ineffective assistance of counsel claim is normally

Petitioner sought review in the Second Circuit Court of Appeals. [*Id.*, Exhibit N] On November 14, 2007, the Second Circuit denied relief as follows,

> The applicant failed to prove errors regarding ineffective assistance of counsel. Moreover, the applicant has also failed to demonstrate a reasonable probability that the results of the proceedings would have been different absent the alleged errors. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984).
>
> Thus, the applicant has failed to meet his burden of proving that post-conviction relief should have been granted. La. C.Cr.P. art. 930.2; *State v. Berry*, 430 So.2d 1005 (La. 1983). [*Id.*, Exhibit O]

On December 4, 2007, petitioner applied for writs in the Louisiana Supreme Court; and thereafter submitted a supplemental pleading. [*Id.*, Exhibits P-Q] On October 3, 2008 the Supreme Court denied writs without comment. [*Id.*, Exhibits R-T; see also *State of Louisiana ex rel. Richard P. Jones v. State of Louisiana*, 2008-KH-0110 (La. 10/3/2008), 992 So.2d 296.]

Petitioner filed his federal *habeas corpus* petition on December 18, 2008, arguing eight claims for relief – (1) Excessiveness of sentence; (2) insufficiency of the evidence; (3) court erred in denying motions for mistrial; (4) ineffective assistance of trial counsel – conceded guilt; (5) ineffective assistance of trial counsel – failed to call a single defense witness; (6) ineffective assistance of trial counsel – failed to hire a pathology expert witness; (7) ineffective assistance of counsel – abandonment of appeal; and (8) ineffective assistance of appellate counsel – did not argue claims of ineffective assistance of trial counsel as set forth above, and raised claim of excessiveness of sentence even though petitioner received the minimum mandatory sentence. [rec. doc. 1-4, pp. 3-4]

On May 7, 2009, the undersigned completed an initial review and noted that Claims 1, 2,

---

litigated in post conviction proceedings, therefore this Court sees no duty on the part of [appellate counsel] to raise this on the appellate level." [*Id.*, Exhibit L]

and 3 were argued on direct appeal to the Second Circuit Court of Appeals, but were never presented to the Louisiana Supreme Court and therefore state court remedies, with regard to these claims, remained unexhausted. The undersigned also observed that such remedies were now unavailable, and therefore these claims could be considered technically exhausted but procedurally defaulted. The undersigned further observed that unless petitioner could demonstrate "cause and prejudice" for the default or "actual innocence" the claims were subject to dismissal. Petitioner was encouraged amend his petition to make such a showing. Further, the undersigned observed that while State court remedies had been exhausted with regard to Claims 4, 5, 6, 7, and 8, petitioner had not demonstrated deficient performance or prejudice as required by the jurisprudence. Petitioner was therefore directed to provide additional support for his claims of ineffective assistance of counsel. [rec. doc. 4]

On July 15, 2009, petitioner submitted an amended complaint. With regard to Claims 1, 2, and 3, petitioner conceded that he "... did not seek review of those claims in the Louisiana Supreme Court and is aware these claims are abandoned..." He also agreed that "no state court remedies remain available for these direct appeal claims..." Finally, with regard to the directive to supply argument to demonstrate cause and prejudice or a miscarriage of justice, petitioner replied, "The claims were not exhausted intentionally and petitioner seeks no further review of these three direct appeal claims." [rec. doc. 8]

With respect to the remaining claims of ineffective assistance of counsel (Claims 4, 5, 6, 7, and 8) petitioner provided additional argument and evidence in support of those claims, including copies of the statements he made to investigating officers following the incident in question. [rec. doc. 8]

***Law and Analysis***

### 1. Rule 4 Considerations

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides for prompt review and examination of *habeas* petitions by the court and further states, "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." Citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), the Advisory Committee Notes following Rule 4 state, "...under § 2243 it is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer."

Petitioner has provided the complete trial transcript along with transcripts of the statements he gave to the investigating officers, all of the relevant post-conviction pleadings filed in the Fifth Judicial District Court , the Second Circuit Court of Appeals, and the Louisiana Supreme Court and, the judgments denying relief. Further, he was provided an opportunity to submit additional factual support for his ineffective assistance of counsel claims. In other words, the record herein is complete and review of the record indicates that petitioner is not entitled to relief because he has not demonstrated that the State courts' decisions denying post-conviction relief involved unreasonable applications of clearly established federal law, or resulted in decisions that were based on an unreasonable determination of the facts.

### 2. Voluntary Dismissal of Defaulted Claims

As noted, petitioner has conceded his failure to exhaust available State court remedies with regard to Claims 1, 2, and 3. Those claims were argued on direct review to the Second Circuit Court of Appeals but were never presented to the Louisiana Supreme Court. Petitioner also conceded that State court review of these claims is no longer available and therefore the

claims should be considered procedurally defaulted. Finally, petitioner asserted that he "... seeks no further review of these three direct appeal claims." [rec. doc. 8] It is therefore recommended that this statement be construed as a voluntary motion to dismiss, that it be granted, and that Claims 1, 2, and 3 be dismissed.[4]

## 3. AEDPA Standards for Review

This petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), therefore federal *habeas corpus* review is governed by the provisions of the AEDPA, specifically 28 U.S.C. § 2254(d)(1) and (2) which define the standard for review.

Under the AEDPA, *habeas* relief is not available to a state prisoner on a claim which was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. §§ 2254(d)(1) and (2).

Questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), while pure questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485

---

[4] Ordinarily, a voluntary dismissal would be a dismissal without prejudice. However, as was shown in the Memorandum Order, Claims 1, 2, and 3 are subject to dismissal as procedurally defaulted and petitioner has not attempted to demonstrate cause and prejudice or actual innocence so as to warrant review of the merits of these defaulted claims. Further, even if these claims were reviewed on their merits, they would be subject to dismissal under Rule 4. For example, petitioner's sufficiency of the evidence claim is clearly without merit. As is shown in the discussion below, petitioner admitted to the elements of manslaughter in his second statement to the investigators. Further, a minimum-mandatory sentence was imposed. Finally petitioner's claims concerning the denial of a mistrial were argued on the basis of Louisiana law. Petitioner has not shown how the denial of his motions for mistrial resulted in a violation of the Constitution and laws of the United States. In other words, even if petitioner had not requested voluntary dismissal of these Claims, dismissal under either the procedural default doctrine or on the merits would have been recommended and thus, any attempt to resurrect these claims at a later date would be futile.

(5th Cir.2000), *cert. denied*, 532 U.S. 1039, 121 S.Ct. 2001, 149 L.Ed.2d 1004 (2001). Ineffective assistance of counsel claims present mixed question of law and fact. *Kitchens v. Johnson*, 190 F.3d 698, 700-01 (5th Cir.1999).

The state court's decision is contrary to federal law within the meaning of § 2254(d)(1) if the state court applies a rule contradicting the governing law set forth in the Supreme Court's cases, or the state court "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's factual findings constitute "an unreasonable application of clearly established" Supreme Court precedent if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. The inquiry into the issue of "unreasonableness" is objective. *Id.* at 409-10. A state court's <u>incorrect</u> application of clearly established Supreme Court precedent is not enough to warrant federal *habeas* relief – the application must also be <u>unreasonable</u>. *Id.* at 410-12 (emphasis supplied).

The state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1). In order to obtain *habeas* relief on the ground that the state court's decision was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the petitioner must rebut by clear and convincing evidence the presumption that the state court's factual findings are correct. See *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir.2000).

"[U]nder the deferential standard of AEDPA, [federal courts] review only the state court's decision, not its reasoning or written opinion, to determine whether it is contrary to or a misapplication of clearly established federal law." *Catalan v. Cockrell*, 315 F .3d 491, 493 (5th

Cir.2002), citing *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir.2002)(*en banc*).

### 4. Ineffective Assistance of Counsel

Petitioner's remaining claims allege ineffective assistance of counsel. The "clearly established Federal law" with respect to such claims is the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and its progeny. In order to prevail on an ineffective assistance of counsel claim, a *habeas* petitioner must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.

An attorney's performance is deficient if it "falls below an objective standard of reasonableness" as measured by professional norms. *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. The *habeas* court must determine "... whether there is a gap between what counsel actually did and what a reasonable attorney would have done under the circumstances." *Neal v. Puckett*, 286 F.3d at 236. In so doing, the Court must "eliminate the distorting effects of hindsight," *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052, and may not assume deficient performance based upon disagreement with strategic choices. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir.1999).

To establish prejudice, the *habeas* petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*

Petitioner's ineffective assistance of counsel claims were adjudicated on the merits. In rejecting petitioner's ineffective assistance of counsel claims, the Fifth Judicial District Court implicitly relied upon *Strickland* and held, as to each instance alleged, that the petitioner failed to establish deficient performance or prejudice. [rec. doc. 1-5, Exhibit L] The Second Circuit Court

9

of Appeals explicitly invoked *Strickland* and concluded that petitioner "... failed to prove

errors..." (i.e. deficient performance) and "... also failed to demonstrate a reasonable probability

that the result of the proceedings would have been different absent the alleged errors..." (i.e.

prejudice) [*Id.*, Exhibit O] Since both prongs of the *Strickland* test were considered by the last

court to issue a reasoned opinion,[5] the deferential standards set forth in §§ 2254(d)(1) and (2)

must be applied. See *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003);

*Rompilla v. Beard*, 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005).

Each of petitioner's claims have been examined in light of the foregoing principals of law

and against the basic facts of the case, most of which were undisputed.

### 5. The Facts of the Case

The Statement of the Facts in the Memorandum in Support of petitioner's *habeas*

petition [rec. doc. 1-4, pp. 1-2] is identical to the recitation of facts contained in the Second

Circuit's opinion on direct appeal. This Statement of Facts is in accord with the evidence

adduced at the trial, including the second statement given by the petitioner to the investigating

officers as is shown below:

> On March 10, 2003, Tracey Duprey, Bobby McCall, and Jonathan McCandlish set
> out on a night of drinking alcohol, smoking marijuana, and committing mischief
> in rural West Carroll Parish. At one point they stole the street sign for Little Creek
> Road. Tracey's ex-sister-in-law, Shawn Morrow, lived with defendant, Richard P.
> Jones, on Little Creek Road. Tracey had visited in defendant's home on several
> occasions. After taking the street sign, the trio decided to pull up defendant's
> mailbox. According to Tracey, their first attempt failed, and they tried again. Both
> McCall and McCandlish got out of the truck to reattach a chain to the mailbox.
> This occurred after midnight, and <u>defendant, who was awakened by the noise,</u>

---

[5] Both the Fifth Judicial District Court and the Second Circuit Court of Appeals reached the merits of petitioner's ineffective assistance of counsel claims. [rec. doc. 1-5, Exhibits L and O] The Louisiana Supreme Court issued a one-word writ denial. [*Id.*, Exhibit R] Since the earlier opinion expressly and clearly relied upon federal law (*Strickland v. Washington*) the Court must presume that no procedural default was invoked by the Louisiana Supreme Court's subsequent unexplained order that left the Second Circuit's judgment and its consequences in place. *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991).

grabbed his 30/30 rifle, went outdoors, and fired off at least one round. McCall
and McCandlish jumped back into their truck and left at a high rate of speed. At
this point, defendant fired at the vehicle and hit it at least three times. One round
went through the wheel well and passenger side seat. A fragment from this round
struck Jonathan McCandlish. Tracey and Bobby took McCandlish to the Delhi
Hospital where he died. (emphasis supplied)

*State of Louisiana v. Richard P. Jones*, 41,880 (La. App. 2 Cir. 3/28/2007) at **1, 954 So.2d
296, 297 (emphasis supplied)

Petitioner also gave two statements to the investigating officers on March 11, 2003. The

first statement was given a 8:20 a.m. and was introduced into evidence at the trial (State Exhibit

42, 42-a, 44); the second statement was given at 9:30 p.m. and was also introduced into evidence

at trial (State Exhibits 43, 43a, 45) [see rec. doc. 1-5, Exhibit U, p. 263] Petitioner provided

copies of the transcripts of the statements. [rec. doc. 8]

According to the second statement, petitioner was in bed asleep when he was awakened

by a loud truck "spinning out" in his driveway. Upon being awakened, petitioner grabbed his

30/30 rifle and went outside to investigate. He observed a pick-up truck heading down the road;

the truck stopped and turned around and returned to his driveway.  A man exited the truck and

began to wrap a chain around petitioner's mailbox. Petitioner yelled at the man; however, the

man ignored him. Petitioner fired a shot into the air and the man returned to his truck and "took

off" jerking petitioner's mailbox out of the ground. Petitioner then fired two more shots at the

"back corner of the truck ... behind the fender wall toward the corner at the tail gate, the angle at

the truck because it was moving..." According to petitioner, he "... was pointing at the tail gate, it

was dark, ... he didn't have any lights on... I was aiming at that way, at the tail gate. I wasn't

shooting to kill nobody, I wasn't shooting to hit nobody. I was shooting to scare them." Petitioner

heard the first shot hit the truck; then he shot a second time at the "same angle."  He then fired

two more shots over the top of the truck.  Petitioner stated that he intended to, and was,  shooting

at the tail gate of the truck – but, at the angle he was standing, he was facing the "side" of the truck. According to petitioner, "I wasn't shooting at nobody to kill nobody or nothing like that. I was just shooting at the truck." Petitioner identified the persons who were at his house at the time of the incident – Shawn Morrow (his girlfriend), Jessica Gary (Shawn's teen age daughter) and Leo Cantou (Jessica's boyfriend). Petitioner told Shawn that he thought he had hit the tailgate of the truck. After Shawn contacted law enforcement, petitioner telephoned his sister Shelia Holmes who was in Crowville; he told her that someone "...jerked my mail box up and that I had shot at them..." He then called his son Paul Jones and told him the same thing. Petitioner concluded his statement as follows, "I'd just like to say I wasn't meaning to kill nobody. I was just meaning to scare them." [rec. doc. 8, pp. 8-22]

Petitioner's first statement was similar except, petitioner claimed that he fired all five of his shots into the air – "I was pointing up like this right here. I mean I just, I wasn't pointing at the truck. I was pointing up like this and I shot probably twice, you know, up in the air, like a forty-five, you know." [rec. doc. 8, pp. 23-74]

At trial, the following witnesses testified: (1) Kendal McCandlish (the father of the victim); (2) Tracey Gary Duprey (an occupant of the pick up truck); (3) Shawn Morrow (petitioner's girlfriend); (4) Jessica Gary (Shawn Morrow's daughter); (5) Dr. Stephen Haynes (forensic pathologist); (6) Leo Cantou (Jessica Gary's boy friend); (7) Dy. John Warner (an investigating officer); (8) Chief Deputy Louis Russell (investigating officer); (9) Trooper Todd Cummings (investigating officer); and (10) Michael Stelly (firearms examiner with the state crime lab).

As is shown hereinafter, the facts of the case, as established at trial and set forth in the State Court record, including petitioner's second statement to the investigating officers, clearly

demonstrate that each of petitioner's ineffective assistance of counsel claims is without merit and that petitioner has not shown that the findings and conclusions of the Louisiana Courts was unreasonable.

### A. Trial counsel conceded petitioner's guilt on two occasions [rec. doc. 1-4, pp. 16-18]

Trial counsel concluded his opening statement as follows, "When Mr. Jones was told that he had hit this boy and he died, he became visibly ill, this is not a person that had intent to kill. This is a person that was home in bed at 1:15. And I believe that after you hear all of the evidence you will realize that this is negligent homicide, not second degree murder." [rec. doc. 1-5, Exhibit U, Trial Transcript at pp. 180/447] Likewise, during closing argument counsel said, "If he was aiming at the people in the truck, that bullet would have been in the door, it wouldn't have been in the fender, no people are in the back of that pickup truck. Richard is not totally innocent, he is definitely guilty of criminal negligence, I'm not asking you for not guilty... If you think his actions were not proper, I'm not going to say they are, they were a gross deviation from what a reasonable person would be – do, that is negligent homicide. That is the proper verdict... And I contend to you that the only proper verdict in this case is negligent homicide." [*Id*., at pp. 552-553/819-820.]

Citing *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), petitioner implies that in making this argument, his attorney failed "... to subject the prosecution's case to meaningful adversarial testing..." and therefore, this Court must presume prejudice because, in making this concession, petitioner was thereby constructively denied his right to counsel.

The basic facts of this case were not seriously disputed. The only seriously disputed issue at trial was whether petitioner had the specific intent to kill the victim. Indeed, that was the

conclusion reached by the trial court in denying petitioner's application for post-conviction relief.

As noted previously, the trial court observed, "The real question at issue was whether there was

specific intent to kill ... There is no doubt that the defendant shot the rifle that resulted in the

death of the victim." [rec. doc. 1-5, Exhibit L] Accordingly, petitioner's implied reliance on

*Cronic, supra*, is misplaced. In order for the presumption of prejudice to apply, petitioner must

show that his attorney completely failed to challenge the prosecution's case, not just individual

elements of it. *Haynes v. Cain*, 298 F.3d 375, 380-81 (5th Cir. 2002)(en banc) (citing *Bell v.

Cone*, 535 U.S. 685, 122 S.Ct. 1843, 1851, 152 L.Ed.2d 1843 (2002)(in turn quoting *Cronic*, 466

U.S. at 659, 104 S.Ct. 2039). In *Haynes v. Cain*, the petitioner was charged with First Degree

Murder and faced the death penalty. In the face of overwhelming evidence of the defendant's

guilt, his attorneys made the strategic decision to concede petitioner's guilt with respect to the

predicate felonies (kidnapping, rape, and armed robbery) and contest the single issue of whether

the defendant possessed the  specific intent to kill his victim. The Fifth Circuit provided the

following analysis:

> Previous circuit court decisions have elaborated on this distinction between
> ineffective assistance of counsel and the constructive denial of counsel.
> Collectively, these decisions reinforce the notion that defense counsel must
> entirely fail to subject the prosecution's case to meaningful adversarial testing for
> the *Cronic* exception to apply. *Gochicoa v. Johnson*, 238 F.3d 278, 285 (5th
> Cir.2000) (holding that '[w]hen the defendant receives at least some meaningful
> assistance, he must prove prejudice in order to obtain relief for ineffective
> assistance of counsel' (quoting *Goodwin v. Johnson*, 132 F.3d 162, 176 n. 10 (5th
> Cir.1997))). Thus, when analyzing an attorney's decision regarding concession of
> guilt at trial, courts have found a constructive denial of counsel only in those
> instances where a defendant's attorney concedes the only factual issues in dispute.
> See *United States v. Swanson*, 943 F.2d 1070, 1074 (9th Cir.1991) (holding that
> '[a] lawyer who informs the jury that it is his view of the evidence that there is no
> reasonable doubt regarding the only factual issues that are in dispute has utterly
> failed to subject the prosecution's case to meaningful adversarial testing'). In
> contrast, those courts that have confronted situations in which defense counsel
> concedes the defendant's guilt for only lesser-included offenses have consistently
> found these partial concessions to be tactical decisions, and not a denial of the

right to counsel. [*footnote*: See *United States v. Short*, 181 F.3d 620, 624-5 (5th Cir.1999) (holding that counsel's statements, which did not admit guilt, but which implicated the defendant, were reasonable in light of the overwhelming evidence presented at trial); *Lingar v. Bowersox*, 176 F.3d 453, 458 (8th Cir.1999) (stating that 'the decision to concede guilt of the lesser charge of second-degree murder was a reasonable tactical retreat rather than a complete surrender'); *Underwood v. Clark*, 939 F.2d at 474 (concluding that defense counsel's concession during closing arguments of a lesser included offense was 'a sound tactic when the evidence is indeed overwhelming ... and when the count in question is a lesser count, so that there is an advantage to be gained by winning the confidence of the jury'); *McNeal v. Wainwright*, 722 F.2d 674, 676 (11th Cir.1984) (finding that McNeal's attorney's statements conceding manslaughter during a murder trial were tactical and strategic and did not constitute a forced guilty plea).]
As such, they have analyzed them under the two-part *Strickland* test.

In the instant case, Haynes' defense counsel did not entirely fail to subject the prosecution's case to meaningful adversarial testing. Rather, Haynes' attorneys acknowledged that the prosecution's evidence establishing that Haynes raped and robbed Yang was overwhelming. After making this specific concession, however, Haynes' attorneys remained active at trial, probing weaknesses in the prosecution's case on the issue of intent. They cross-examined state witnesses to emphasize that Yang wore thick glasses which were never located and that the victim landed face down when she fell, supporting their theory that she may have accidentally fallen when trying to flee from Haynes. They also elicited testimony that Yang's pants were only 'slightly' pulled down in an attempt to show that she could have run off the roof under her own power. Defense counsel hoped that this strategy would de-emphasize the graphic nature of the crime and would focus the jury's attention on the one area where the prosecution's case was not exceedingly strong.

In sum, this is not a situation in which Haynes' attorneys abandoned their client. Instead, they continued to represent him throughout the course of the trial, adopting a strategy which in their judgment accorded Haynes the best opportunity for a favorable outcome. Ultimately, their strategy proved effective in avoiding the death penalty for their client. As the Supreme Court indicated in *Bell*, when defense counsel pursue a strategy, even if it involves conceding certain elements or remaining inactive at specific points during the trial, we will examine the effectiveness of their performance and the propriety of their decisions under *Strickland*. *Bell*, 122 S.Ct. at 1851-52.

*Haynes v. Cain*, 298 F.3d at 381-82.

In the instant case, as is shown above, the evidence, including petitioner's own statement, established that petitioner fired several shots from a high-powered rifle toward a fleeing vehicle

which he knew was occupied by at least one person.  When his attorney conceded guilt of negligent homicide, he did not thereby concede guilt on the key issue at trial, namely whether petitioner had the specific intent to kill.

In light of the foregoing, the Second Circuit's determination that petitioner showed neither deficient performance nor prejudice was not unreasonable since, with regard to the first prong of *Strickland*,  petitioner's after-the-fact disagreement with the strategic choices of his attorney did  not establish deficient performance. See *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir.1999).

Further, and more importantly, in order to establish the prejudice prong of *Strickland*, petitioner must have shown "... that there is a probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Based on the evidence adduced at trial, and admitted to by the petitioner, the Second Circuit correctly concluded that petitioner failed to establish that but for the concession strategy, he would have been acquitted.  As shown above, petitioner's second statement was in effect a confession to manslaughter under Louisiana law which is defined as, "... a homicide committed, without any intent to cause death or great bodily harm ... [w]hen the offender is engaged in the perpetration ... of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person..." See La. R.S.14:311(A)(2)(a).  Under Louisiana law, an assault is defined as "... the intentional placing of another in reasonable apprehension of receiving a battery..." La. R.S.14:36.  Further, an aggravated assault, that is, one committed with a dangerous weapon, is an intentional misdemeanor directly affecting the person; and, aggravated assault with a firearm, that is an aggravated assault committed by the discharge of a firearm (see La. R.S.14:37.4),  is a felony which is not enumerated as one of the predicate felonies listed in

first (La. R.S.14:30) or second degree murder (La. R.S.14:31).

In his statement, which was introduced as evidence, and considered by the jury, petitioner admitted "I wasn't shooting to kill nobody, I wasn't shooting to hit nobody. I was shooting to scare them." Petitioner has not, nor can he demonstrate prejudice in this instance since he cannot show "... that there is a probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. The evidence clearly and unequivocally established that petitioner committed an aggravated assault with a firearm when he attempted to frighten the occupants of the speeding pick up truck. During the course of that assault, the victim was killed. Petitioner, by his own admission, was guilty of manslaughter.

### B. Trial Counsel was ineffective because he failed to call a single defense witness or hire an expert in pathology to testify at trial. [rec. doc. 1-4, pp. 19-20]

Petitioner also complains that trial counsel was ineffective because he failed to call any defense witnesses including an expert pathologist. On May 7, 2009, the undersigned directed petitioner to amend his petition to "... identify the witnesses ... that trial counsel failed to call and ... provide a short but detailed synopsis of the testimony those witnesses would have provided..." He was also directed to "... provide a short but detailed synopsis of the testimony that would have been provided by a pathologist had one been called to testify..." [rec. doc. 4, p. 10]

In response petitioner identified two fact witnesses that his attorney should have called – his sister Sheila Holmes, and his son Paul Jones. According to petitioner, he called these witnesses on the night in question; had they been subpoenaed, "[t]hey could have proved that petitioner never meant to hit no one." [rec. doc. 8, p. 4] He further claimed that a pathologist "... would have proved that this was an accident..."

In *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) the Fifth Circuit recently noted:

> This Court has repeatedly held that complaints of uncalled witnesses are not favored in federal *habeas* corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative.[citation omitted] Thus, to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. [citation omitted] We have required this showing for claims regarding uncalled lay and expert witnesses alike. See, e.g., *Evans v. Cockrell*, 285 F.3d 370, 377-78 (5th Cir.2002) (rejecting uncalled expert witness claim where petitioner failed to present evidence of what a scientific expert would have stated); *United States v. Doublin*, 54 Fed.Appx. 410 (5th Cir.2002).

Here petitioner has identified his fact witnesses but, other than conclusory and self-serving allegations, he has failed to set out the content of their proposed testimony, and, more importantly, he has failed to show how the testimony could have been admitted in the first place. With regard to Holmes and Jones, by his own admission, these witnesses were not even present when the incident occurred. Their knowledge of the case was limited only to what the petitioner related to them on the telephone, and, that evidence, even if admitted at trial, would have merely corroborated petitioner's confession with regard to the issue of intent. As shown above, the jury accepted petitioner's version of the incident when it determined that the homicide was not intentional.

Further, with regard to the expert witness testimony, petitioner has provided no reason to believe that a pathologist could have established petitioner's intent by examining the wounds sustained by the victim. In any event, as shown above, the jury accepted petitioner's version of the incident and therefore even if these witnesses had testified as suggested by petitioner, the results of the trial would have been the same. In short, petitioner has not established that the State courts' decisions on this issue was unreasonable and therefore, he is not entitled to relief.

### C. Trial Counsel Abandoned Petitioner's Appeal [rec. doc. 1-4, pp. 20-22]

Petitioner claims that his retained trial counsel "abandoned" the appeal. Assuming for the purposes of this Report that all of petitioner's allegations are true, he cannot establish prejudice, because, even if his retained attorney "abandoned" his appeal, the fact remains that petitioner ultimately obtained appellate review of his conviction. Again, petitioner has not established that the State courts' decisions on this issue was unreasonable and therefore, he is not entitled to relief.

### D. Ineffective Assistance of Appellate Counsel [rec. doc. 1-4, pp. 22-23]

Finally, petitioner complains that his appellate counsel was ineffective for failing to argue the above claims of ineffective assistance of counsel on appeal and for raising an excessive sentence claim. These claims are without merit for two reasons. First, counsel's performance may not be deemed deficient for failing to argue a frivolous or non-meritorious claim on appeal. *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986); *Smith v. Robbins*, 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). As shown above, each instance of ineffective assistance of trial counsel relied upon by petitioner as the basis for his ineffective assistance of trial counsel has been shown to be without merit under the *Strickland* test, therefore appellate counsel's failure to raise these claims on appeal cannot be deemed deficient. Second, each of these claims was ultimately presented to and rejected by the Second Circuit Court of Appeals and the Louisiana Supreme Court. Thus, even if counsel's failure to raise these claims on appeal could be considered deficient, petitioner cannot show prejudice since these exact claims were ultimately rejected by the Court of Appeals.[6]

---

[6] Finally, under Louisiana law, claims of ineffective assistance of trial counsel are more properly raised in an application for post-conviction relief in the district court where an evidentiary hearing may be conducted. Only where the appellate records discloses sufficient evidence determinative of the issue may the claim be raised and addressed on appeal. See *State v. Lockhart*, 629 So.2d 1195 (La. App. 1 Cir. 10/15/1993), writ denied, 94-0050

Likewise, petitioner has not shown that counsel's appellate assignment of error concerning excessiveness of sentence resulted in any prejudice.

**6. Conclusion and Recommendation**

Petitioner asks that he be allowed to voluntarily withdraw Claims 1, 2, and 3. Those claims were not presented to Louisiana's Supreme Court on direct review and therefore state court remedies were not fully exhausted. Of course, petitioner would now be unable to litigate those claims in the Louisiana courts, so, while technically exhausted the claims should be considered procedurally defaulted. Petitioner has presented no argument or evidence to establish cause for his default and prejudice resulting from the default; nor has he demonstrated that this Court's failure to review the merits of the claims will result in a miscarriage of justice.

Further, the remainder of petitioner's claims – Claims 4, 5, 6, 7, and 8 – all of which argue various instances of ineffective assistance of counsel – were adjudicated on the merits in the Louisiana courts. The Louisiana courts denied relief on these claims because petitioner failed to establish deficient performance and prejudice as required by the United States Supreme Court in *Strickland v. Washington*. Petitioner has not shown that the findings and conclusions of the Louisiana courts were unreasonable and therefore his petition should be dismissed with prejudice.

Therefore,

***Therefore,***

**IT IS RECOMMENDED** that petitioner's motion to voluntarily dismiss Claims 1, 2, and 3 of the petition for writ of *habeas corpus* [rec. doc. 8] be **GRANTED** and that those claims be **DISMISSED;** and,

---

(La.4/7/94), 635 So .2d 1132.

**IT IS FURTHER RECOMMENDED** that the remaining claims of ineffective assistance of counsel – Claims 4, 5, 6, 7, and 8 be **DISMISSED WITH PREJUDICE** pursuant to the provisions of Rule 4 since it plainly appears from the face of the petition and exhibits that the petitioner is not entitled to relief .

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, August 12, 2009.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE